NATHAN P. MAKER *vs.* THE SLATER MILL AND POWER COMPANY.

The provisions relative to fire-escapes and stairways in the "building act for the city of Providence," Pub. Laws R. I. cap. 688, of April 12, 1878, are too indefinite and uncertain to impose a criminal liability upon the owner of a building for not furnishing either fire-escapes or stairways, as provided in the act, before the inspector of buildings has required them.

Hence an action cannot be maintained under Pub. Stat. R. I. cap. 204, § 21, arising from the crime or offence of not furnishing such fire-escapes or stairways.

TRESPASS ON THE CASE. On demurrer to the declaration.

This is one of several cases brought against the defendant for neglecting to provide fire-escapes, in alleged violation of Pub. Laws R. I. cap. 688, of April 12, 1878, in consequence of which the plaintiff was injured by a conflagration in the building in which he was employed. See *Grant* v. *Slater Mill & Power Co.* 14 R. I. 380; *Baker* v. *The Same*, 14 R. I. 531.

*Arthur L. Brown, Augustus S. Miller, Henry J. Spooner*, for plaintiff.

A. The duty to provide fire-escapes or stairways was imposed upon defendant by Pub. Laws R. I. cap. 688, §§ 23, 26.

I. As owner, —

a. The lack of provisions, in the building act, to decide which of two or more persons shall perform the duty, indicates that it is always upon one and the same person.

b. The duty is in the alternative, either fire-escapes or stairways. *Stairways* must be provided by the owner. There is a choice. This proves that the same person is to provide both.

c. The owner is liable on his omission to provide stairways, whether there is a doubt concerning fire-escapes or not.

d. Because the owner must repair escapes and stairways. It is improbable that he should be required to repair another's property.

e. The duty appertains to the building, and naturally to the person in control thereof.

f. Because the owner, by maintaining a dangerous structure, creates the necessity.

g. Because the owner alone has a right to put them on the building.

II. Both as owner and person in control, —

a. The defendant cannot avail itself of such doubts as may possibly exist. These doubts can only be between an owner and a person in control of the whole building. The defendant is both.

III. Upon any other view than the foregoing the statute is inoperative.

IV. The absurdities involved in supposing the duty to rest upon any other person than the owner are such as to preclude that view. They are : —

a. That the building law should not indicate when the duty is to rest on a tenant.

b. That a tenant of a part must provide the building with an attachment necessary to its use as a whole. *Grant* v. *Slater Mill & Power Co.* 14 R. I. 380.

c. It would violate owner's property rights.

d. A tenant would be obliged to furnish egress for other tenants.

e. Because the owner's right to repair is inconsistent with the tenant's ownership of escape.

f. Because it would not be enough for the tenant to provide egress from the room which he hires.

g. Enumeration of cases wherein the statute would be so doubtful as to be inoperative.

h. It would involve a departure from the purposes of the act as defined in *Grant* v. *Slater Mill & Power Co.* 14 R. I. 380, and would be inconsistent with such purposes.

i. That the legislature intended the least reasonable meaning.

j. It would destroy all short terms of hiring workshops.

k. That it should have been intended that a tenant should construct such stairways as are required in Pub. Laws R. I. cap. 688, § 26, of April 12, 1878.

V. If there was any doubt as to the owner's liability, it was not a misleading one, and he was not prejudiced thereby, having full power to ascertain his rights and liabilities.

VI. Principles of construction applicable to cap. 688.

If there. are two different senses, the court will adopt that which will not lead to an absurdity.

A court should strive to uphold a statute by any reasonable construction.

Statutes to effect a public good are not in a strict sense penal although they impose a penalty.

Penal provisions, like all others, are to be fairly construed. Sedgwick on Statut. & Constit. Law, pp. 282, 283, 326, 327.

B. As to the four questions suggested by the court in *Baker* v. *Slater Mill & Power Co.* 14 R. I. 531:

*First.* Is an omission to meet the requirements of the building act, the act being a local statute and its requirements in the nature of local police regulations, a crime or offence within the meaning of Pub. Stat. R. I. cap. 204, § 21 ?

a. This is simply an inquiry into the definition of the words, " crime and offence," in § 21. They are used in their ordinary sense, covering all infractions of public duty.

b. There is no reason to restrict this meaning, which is consistent with the purposes of cap. 204.

c. The words, " the act being a local statute, and its requirements in the nature of local police regulations," do not affect the construction of § 21, and can have no bearing, unless it is intended that the infraction of a local law of such nature is not a " *crime or offence.*" This is merely a question of definition.

d. That an act is *local* renders its violation none the less a " crime or offence."

e. The provisions of the building act are not " in the nature of police regulations," but are substantially different.

Police regulations are made by town and city councils acting under delegated authority.   Pub. Stat. R. I. cap. 38.

The building law is the direct enactment of the legislature.

Police regulations are mainly of an unimportant nature, and designed for public comfort, or to provide modes of enforcement of public duties.

This act has the highest object a statute can have, — the safety of human life and property.

Their resemblance is accidental, their difference substantial.

*Second.* Is such an omission the commission of a crime or offence within the meaning of § 22?

a. Like the foregoing, this is simply an inquiry into the definition of the words " *crime or offence.*"

b. To say that the " commission of a crime or offence " means *only* the commission of an *act*, is to rob the words " crime or offence " of just half their meaning.

c. Can we say the " commission of a crime," — crime, omission or commission, — when taking the whole meaning of the word "crime," it involves " commission of an omission " ? Certainly; just as we say, the commission of a sin, either by doing what we ought not to do, or leaving undone what we ought to have done.

The expressions, " He was doing nothing," and " He did not do," involve the same difficulty, if it be a difficulty.

*Third.* Is an injury which results from the commission of a crime or offence not immediately but consequentially actionable under § 21?

a. The provision that " an action on the case may be brought " proves this beyond doubt, this being the peculiar action for consequential injuries.

b. Consequential injuries are as meritorious causes of action as immediate.

*Fourth.* Is a corporation liable to prosecution by complaint and warrant, and if not, are the fines imposed by the building act recoverable by indictment?

a. A corporation is liable to prosecution by complaint or warrant, and in no other way, for this offence. Pub. Stat. R. I. cap. 251, §§ 1, 4; cap. 197, § 1; *Parker* v. *Barstow,* 5 R. I. 232, 233.

b. But if *not,* the civil liability is not affected. It cannot be argued that because the statute is defective as to means of enfor-

cing criminal liability, for that reason alone no civil liability exists. The only result would be that no complaint need be made or process issued.

c. We are not concerned with the sufficiency of process, but only with making complaint. Process is the act of the magistrate, and a plaintiff should not be responsible for what is out of his control.

*Charles Hart, Benjamin T. Eames & Stephen A. Cooke, Jun.*, for defendant.

*July* 18, 1885.    STINESS, J.    Plaintiff sues under Pub. Stat. R. I. cap. 204, § 21,[1] claiming that he has suffered an injury to his person by the commission of a " crime or offence" on the part of the defendant.    The crime or offence consists in an alleged violation of the building act, so called, Pub. Laws R. I. cap. 688, of April 12, 1878.    Since the decision of the court sustaining a demurrer to the declaration in *Baker* v. *Slater Mill & Power Co.* 14 R. I. 531, complaint has been made against the defendant, pursuant to Pub. Stat. R. I. cap. 204, § 22,[1] and process has issued thereon, which is duly averred in this declaration, but there is no averment of service of such process, or of any proceedings thereon. A demurrer is filed to this declaration. Several grounds have been urged in support of the demurrer which need not now be considered ; *e. g.* that the statute giving a right of action for injury sustained " by the commission of any crime or offence " does not include a mere neglect of duty, or omission to comply with the requirements of law ; that such a statute does not apply to a plaintiff to whom the defendant owed no duty outside of statutory

---

[1] Cap. 204, §§ 21, 22, are as follows: —

" SECT. 21.    Whenever any person shall suffer any injury to his person, reputation, or estate by the commission of any crime or offence, he may recover his damages for such injury, either in an action of trespass or in an action of the case against the offender.

" SECT. 22.    No such action, except as provided in the five sections preceding the last, shall be commenced for such injury until after complaint has been made to some proper magistrate for such crime or offence, and process issue thereon against the offender, excepting only those cases in which such actions may now be maintained at common law; and whenever any person shall be convicted of larceny, he shall be liable to the owner of the money or articles taken for twice the value thereof, unless the same be restored, and for the value thereof in case of restoration."

requirements ; that the terms " crime or offence " do not apply
to a violation of the act in question, upon the ground that it is not
a public statute, but a local police regulation; that the injury, for
which an action can be sustained, must be the immediate and not
the consequential result of the omission charged.   Assuming all
these points in favor of the plaintiff, the fundamental question re-
mains, whether the defendant's omission to provide its building
with fire-escapes or stairways, as required by cap. 688, is a " crime
or offence."   If, under the act, an owner of a building is not crim-
inally liable for neglect to comply with its requirements, the
foundation of the plaintiff's action fails.   The penal provision in
the act is in the general terms of § 37, " Any person violating
any provision of this act shall be fined," etc.   Our inquiry, then,
is whether an owner, complained of for neglecting to provide fire-
escapes or stairways, could be found guilty under the provisions of
the act.   The requirements of the act are minute and manifold.
Some clearly pertain to the owner, some to the contractor or
builder, some to tenants, and some to other persons, while in
many cases it is by no means clear to whom the duty imposed by
the act belongs.   The duty to provide fire-escapes or stairways is
explicit.   The section reads as follows : —   .

" SECT. 23. Every building already built or hereafter to be
erected, in which twenty-five or more operatives are employed in
any of the stories above the second story, shall be provided with
proper and sufficient strong and durable metallic fire-escapes or
stairways, constructed as required in this act, unless exempted
therefrom by the inspector of buildings, which shall be kept in
good repair by the owner of such building, and no person shall at
any time place any incumbrance upon any of such fire-escapes."

But upon whom does the duty rest, when is it to be per-
formed, and what facts are necessary to constitute a violation of
the duty ?

The plaintiff claims that the reasonable construction of the act
puts the duty upon the owner.   He argues that, as there is an
alternative between fire-escapes or stairways, the duty must be
upon one and the same person, and that person the owner, because
only he could provide stairways.   We do not see that this is nec-
essarily so.   Of course, permanent or structural improvements are

ordinarily made by an owner; but if a lessee takes a building as it stands and then lets into it twenty-five or more operatives, it is difficult to see why by his act a burden should be cast upon the owner, which may not have been expected or provided for when the contract was made. It is said that no one but the owner would have the right to put fire-escapes on a building; but, on the other hand, if a building was under lease, what right would the owner have to enter and interfere with the lessee's occupation by erecting stairways, such as are required by the act? Moreover, if the duty is solely upon the owner, why should the act particularly specify that he should keep the stairways or escapes in repair? The plaintiff further urges that the defendant in this case is liable, because it is both the owner and the party in control of the building. Without control over the number of persons which tenants may employ, the same unexpected burden might suddenly be cast upon the person in control of a building by the act of a tenant. Under the construction claimed, such person would be made criminally liable by the act of another person, which he had no power to prevent. But if an owner is to be held responsible by reason of his control, then it follows that a lessee must be held responsible when he is in control; and so the question recurs, Whose is the duty? In most cases it would not be an unreasonable construction to say that the duty of complying with a statute is upon the one who creates, and has the power to prevent, the necessity of complying with it. Under the present act this might be the owner or tenant, and the very alternative which is given is possibly significant. It may have been thought that owners could make the permanent, structural provision of stairways, and that lessees or tenants, if they create the necessity, could provide the light, temporary, and less expensive fire-escapes. A more troublesome question arises in the case of a building let out to tenants, when no one of them employs twenty-five persons, but when, all together, they exceed that number, thus bringing the building within the law in this respect. Undoubtedly it would be most natural to look to the owner for the provision, but the statute does not say whose the duty is, nor whose the responsibility for neglect. It is one of the omissions that frequently occur in legislation, but an omission that we do not think we can cure by construction. Suppose, how-

ever, we assume that the duty is upon the owner, having control of a building, the problem is by no means solved. The act does not say when or under what circumstances the duty is to be performed. The act went into effect in ten days after its passage, and it does not seem probable that it was intended to make all owners of buildings, already built, immediately responsible for its multitudinous provisions and liable to its penalties. Immediate compliance with the law in all respects would probably have necessitated changes in many, perhaps nearly all, of the buildings then built. But if the liability of an owner did not attach at once, when did it attach? If there were nothing in the act to indicate the contrary, all its provisions would take effect at the same time. But we think there are indications that the act did not contemplate an immediate compliance with reference to existing buildings. The inspector of buildings is charged with the enforcement of the act, but in the very section in question is given authority to exempt buildings from its requirements. Section 33 provides that, upon complaint, he shall examine buildings already erected, including any workshop having employees on any story above second story, and require such building to be provided with proper and sufficient fire-escapes, stairways, and exits, constructed as described in the act. This section must relate to buildings where there are more than twenty-five employees, for no others are required to have fire-escapes, and, taken in connection with the authority to exempt, indicates that the requirement is to be discretionary with the inspector, dependent, perhaps, upon his judgment of danger in a particular case, or of other equivalent provisions for safety. It also indicates that the time for requiring the fire-escapes is when the inspector requires them. In regard to " buildings for public assembly, already built, and also boiler-houses and rooms and their heating apparatus now built," an express discretion is given to the inspector, namely : " If in his judgment the safety of the public requires it, he shall require that the same be made to conform to the provisions of this act." It is hardly probable that in respect to fire-escapes the act was intended to be more restrictive. If this is so, an owner would not be in default until after examination and notice by the inspector. To construe the provision otherwise, the inspector would be obliged to require only what the law itself

had already required, and that, too, without pointing out how or from whom he should require it.   In *Willy* v. *Mulledy*, 78 N. Y. 310, the court said the defendant " was not permitted to wait until he should be directed to provide " a fire-escape by the commissioners.   " He was bound to do it in such way as they should direct and approve, and it was for him to procure their direction and approval."   But under the law in that case there was no discretion in the commissioners whether to require a fire-escape or not. There was no power of exemption.   The owner was bound to provide one in any event; the commissioners were simply to direct and approve the kind to be used.   But under that act no penalty was to be imposed until after notice by the commissioners.   The case was not based upon the " commission of a crime or offence," but upon a negligence of duty to the plaintiff as tenant of the defendant.   With reference to our statute, it has already been decided in *Grant* v. *Slater Mill & Power Co.* 14 R. I. 380, that the act does not create a duty between an owner and the employees of his tenant, such as to give them a right of action for neglect.   In *Parker* v. *Barnard*, 135 Mass. 116, it was held that the plaintiff, having a license to enter a building, could maintain an action for neglect to protect the elevator well as required by statute.   The court conclude the opinion, however, by saying: " We have not considered the respective duties of the owners and of the occupants of the building as to the protection of the elevator well. Upon this inquiry the case is not before us, and the facts are not reported."

There are many peculiarities and difficulties in the act as it stands, some of which have already been noticed by the court in previous cases; but upon this fundamental point we think it sufficiently appears that the provisions in regard to fire-escapes and stairways are too indefinite and uncertain to impose a criminal liability upon an owner of a building for not providing one or the other before the inspector required it.   Penal statutes must be strictly construed, and a duty must be clearly imposed upon a particular person before we can say that he has violated the law by neglecting it.

We do not think the plaintiff states a case against the defendant under the law, and therefore the demurrer to the declaration must be sustained.                              *Demurrer sustained.*