PETER A. H. JACKSON, Appellant, *against* FRANK M. ODELL, Respondent.

(Decided December 6th, 1880.)

In an action for rent claimed under a lease of a dwelling house, where the defendant set up a counter-claim for damages, from the unhealthy and untenantable condition of the house at the time of the lease, the jury were instructed that if they believed that the house was already infected with disease from the sewer or drains or otherwise, and the landlord had notice of it, then the defendant might recover damages against the landlord if his household were made ill by it; and that if they believed that the hole in the cellar (the existence of which had been proved), was dangerous to health, and purposely concealed by the landlord or his agents by a stone over it, then they might give the defendant damages. *Held*, that as there was no evidence to justify a finding that the plaintiff or his agents did purposely conceal the hole in the cellar, or that he or they had any suspicion that there was such a hole, and no evidence that the plaintiff knew that the house was infected with disease, or that he had reasonable notice of it, or that the defendant's household were made ill by such disease, the instructions, although given, when requested by the defendant, with the qualification, "in case the evidence sustains the proposition," were erroneous; and a verdict for the defendant for damages could not be sustained.

There is no legal presumption that a lessor has knowledge of the particular condition of a house leased by him, from the facts that he is the owner, that he resides in the next house, and that the house leased has been vacant for several months previous; and under such circumstances, and where the house was examined by the lessee before he hired it, an instruc-

Jackson *v.* Odell.

tion to the jury, that, if the lessor represented the house to be in good repair, the lessee had a good right to rely upon it, and if the house was not in good repair, it was no answer to say that the lessor did not know, because it was a misrepresentation of a fact which was presumed to be within his knowledge, is erroneous. It should be left to the jury to say whether the lessor knew the house to be in bad order, and if he did not, whether the lessee had a right to take the lessor's statement as an affirmation by him that he personally knew the house to be in good order.

Appeal from a judgment of this court entered upon a verdict of a jury, and from an order denying a motion for a new trial.

The action was brought in the district court in the city of New York for the sixth judicial district, to recover rent alleged to be due under a lease. The defendant in his answer set up a counter-claim for damages arising from the unhealthy and untenantable condition of the demised premises. The facts are stated in the opinion. The action was removed to this court. At the trial, the jury found a verdict for the defendant for damages. A motion by the plaintiff for a new trial was denied, and judgment for the defendant was entered on the verdict. From the judgment the plaintiff appealed.

*James Clark* and *Joseph Kent*, for appellant.

*Wm. G. Peckham*, for respondent.

Van Hoesen, J. —In Thompson's Monograph on Charging the Jury, it is said that it is error for the judge to submit to the jury a fact, or state of facts, which there is no evidence tending to prove, or to give an instruction with reference to a state of facts not in evidence. Though the author refers to no case decided by the courts of this state, he might have cited *Storey* v. *Brennan* (15 N. Y. 524) and *Rouse* v. *Lewis* (2 Keyes, 352).

In this case, the judge gave to the jury two instructions for which the evidence gave no warrant, and they were both of a character likely to prejudice the plaintiff. The first was: If the jury believe that the house was already infected with disease from the sewer or drains, or otherwise, and the landlord had

notice of it, then the defendant may recover damages against the landlord if his household were made ill by it. The second was : If the jury believe that the hole in the cellar was dangerous to health, and purposely concealed by the landlord or his agents by a stone over it, then the jury may give the defendant damages.

The jury did award the defendant damages. There was not a scintilla of evidence to justify a finding that the plaintiff or his agents did purposely conceal the hole in the cellar, or that he or they had any suspicion that there was such a hole. Nor was there a scintilla of evidence that the plaintiff knew that the house was infected with disease, or that he had reasonable notice of it, or that the defendant's household were made ill by such disease. Upon both points, I shall collate all the evidence. First, as to the hole in the cellar. The defendant swore that he had never any conversation with the plaintiff about the hole ; and that he first saw the hole about a week after he moved in ; he discovered it in cleaning the cellar ; it was concealed by a stone and rubbish, and the ooze from the waste-pipe from the water-closet almost filled the hole ; that the rubbish so covered the hole that it could not be seen before the cellar was cleaned, as the cellar was in a generally dirty condition ; that on sweeping it out, a smell was discovered, and on lifting the stone the cause of the smell was ascertained ; that the hole could not possibly be seen till the rubbish had been removed. It appeared also that the house had been vacant from May 1 till November 1; that for several years prior to the 1st of May, it had been occupied by a Dr. Kearney, who left on bad terms with the plaintiff, and who was examined as a witness for the defendant. There is not in the whole case another word respecting the hole in the cellar, or the plaintiff's knowledge that it was there. How, therefore, could the jury find from the evidence, that the plaintiff personally, or by the hand of his agents, had purposely concealed the hole ? It does not remove the error that the judge said, when the instruction was asked for, "in case the evidence sustains the proposition." He still left it to the jury to find, if they chose, though there was no evidence to support the find-

ing, that the plaintiff had been guilty of fraudulent conceal-
ment. This was sufficient to warrant the reversal of the judg-
ment.

As to the house having been infected with disease, to the
knowledge of the plaintiff, and as to the suffering of the de-
fendant's family or household therefrom, the evidence was the
following: near the back parlor, in which the defendant and
his wife slept, there was a pantry, and whenever the pantry
door was opened there was a bad stench, which required a dis-
infectant to counteract it, and which compelled them to leave
the windows open for ventilation, and to have the pantry fre-
quently scrubbed; there was also a bad smell on the third
floor, and a bad smell in the water-closet, though that was not
so much noticed; the defendant stopped up the flues, to pre-
vent the exhalations from the cellar from coming up into the
living rooms; this last statement must be taken in connection
with another to the effect that the flues were stopped because
the furnace could not be used. The defendant's wife said that
after moving in, she noticed an odor in the back parlor, and in
a sink which was in a hall-room on the third floor; there was
an odor of sewer gas in the closet in the back parlor; a Dr.
Reynolds swore that he had detected a smell of sewer gas in
the house whilst visiting a patient there; a gentleman who
came to the house with the defendant as a boarder, and who
was sick when he came, died in the house of a malarial disease;
and Dr. Reynolds thought that the malady of the patient whom
he attended, might be ascribable to sewer gas. This was all
the evidence which bore on the infection of the house with
disease emanating from the sewer or drains. Dr. Kearney, the
former occupant of the house, a witness hostile to the plaintiff,
was not interrogated as to the prevalence of sewer gas during
the period of his tenancy, nor was any question put to Mary
Moore, the servant of the defendant, or to Susan Thompson, a
boarder with him, as to sewer gas in the house. The defend-
ant said his wife was sick whilst living in the house, but no
evidence was given as to the nature, or the cause, of the dis-
ease; he also said that his children did not get down, but were
under treatment, though he did not state what they were under

Jackson v. Odell.

treatment for. Though there was no evidence upon the subject, the jury must have assumed that the sickness of all was caused by sewer gas. The failure of the defendant to show what the ailment was is significant; and when he did not prove what would have been of the greatest importance to his cause if the fact had actually been as he desired the jury to believe it was, instead of their presuming that the sickness was occasioned by sewer gas, the contrary was the presumption that ought to have been drawn by the jury. Certain it is that there was no evidence that the plaintiff himself, his wife, or his children, were, any of them, sick from the effect of sewer gas.

Upon this evidence, how is the submission to the jury of the question as to whether or not the defendant's family or household was made sick by sewer gas to be justified? The court had very properly thrown out of the case the defendant's claim for injury to his boarding-house business, for there was no evidence to support it, and the question that was submitted referred simply to the damages caused by illness produced by sewer gas. Assuming that the illness of the boarder Calhoun was occasioned by the mephitic vapors of the house, how could the defendant recover damages for the sickness of a boarder? The fact that a boarder became sick was admissible in evidence, to show that the house was dangerous to health, but it could not be an item of the defendant's damages.

Furthermore, there was no evidence whatsoever to show that the plaintiff knew, or had reasonable notice, that the house was infected with disease. The defendant and his wife went through the house before they hired it, and they did not discover the smell of sewer gas. If they did not how is it to be presumed that the plaintiff did? The defendant proved that the foul odors came from a pantry next to the back parlor, and from a sink in a hall room on the third floor. Is it to be presumed that the plaintiff, before the house was let, had gone into the pantry and into the hall room? Why is not the presumption just as strong that the defendant, in his examination of the house, had nosed the stench in both places? It is also in evidence that the smell from the hole in the pipe in the cellar was discovered by the defendant after the cellar had

been swept and cleaned, and that the hole could not have been discovered before. How then could knowledge of that be fairly imputed to the plaintiff? It is true that the defendant says that when they looked over the house, the shutters were partly closed, but it does not require light to enable one to smell. Dr. Kearney, the former tenant, said nothing of sewer gas, and there is not a word of evidence that the defendant ever complained to the plaintiff of the exhalations from the pipes or drains. There was nothing, therefore, to sustain a finding that the plaintiff had notice that the house was infected with disease, and it was error to submit the question to the jury.

I think the learned judge also erred in instructing the jury that the plaintiff was presumed to know the condition of the house.

The judge said, if Jackson represented the house to be in good repair, Odell had a good right to rely upon it, and it is no answer to say that he did not know, because it is a representation of a fact which was presumed to be within his own knowledge. If I represent for some purpose that I have got $100 in my pocket as my own, and obtain credit upon the strength of that representation, and it turns out that I do not have $100, it is a false representation, and it is no excuse that I do not know the fact, because it is a fact which, it is presumed, is within my own knowledge, and it is a misrepresentation which you have a right to rely on as being within my own knowledge. So with regard to Mr. Jackson; it being his property, he residing next door, he would be presumed to have knowledge of the particular condition of these premises, seeing that they had been vacant for six months; and it is no defense, if you find they were out of repair, that he did not know it.

Although the illustration given by the learned judge was correct as an abstract proposition, it was not at all applicable to the facts of this case, and was calculated to mislead the jury. There are undoubtedly instances in which the law imputes knowledge to a person who makes an affirmation respecting the subject of a negotiation, and will hold him accountable for the

Jackson *v.* Odell.

truth of his representation. These are cases in which the means of knowledge lie exclusively or peculiarly within his reach. He will also be liable where he makes a representation concerning an article, and no opportunity for examination is given to the other party. So, where a person professes to know a matter of which he has no knowledge, and speaks in such a way as to lead one dealing with him to believe that he knows whereof he speaks, he is answerable if his statement proves to be untrue, though he was not aware that it was unfounded. But the facts of this case required the application of an entirely different principle from that which was laid down. It is not true that a landlord is presumed by law to know the peculiar condition of all the houses he owns, nor is such a presumption created by the fact that he lives next door to the house which he is letting, or by the fact that the house has been vacant for any period, long or short. He has not any peculiar or exclusive means of knowledge respecting its condition; that is, there is no legal presumption that he has, though there may be instances, of course, in which, as matter of fact, he does possess exclusive or peculiar information. Furthermore, the house was examined by the defendant before he hired it, and both parties had the same opportunity to discover such defects as were open to observation. A representation that a defect which was visible to any ordinary observer, did not exist, would give the defendant no right to rescind the lease. As to defects which ordinary observation would not detect, the defendant might very properly rely on the plaintiff's assurance that the house was in good order. If it should appear that the plaintiff led the defendant to believe that he was speaking of a matter within his own knowledge, when he said the house was in good order, fraud would have been imputed by the law to the plaintiff, if the house were not in good order. But if the defendant had no right to suppose that the plaintiff was speaking of the condition of the house as a fact within his own knowledge, then fraud could not be charged upon the plaintiff, though the house was not as the plaintiff represented it. Where the language might be understood either as the expression of an opinion or as a statement of a fact within the

knowledge of the speaker, it is for the jury, and not for the court, to say whether the person to whom it was addressed had a right to place the latter construction upon it, and to rely upon it as a positive guaranty that the fact was as stated. Aside from the smell of sewer gas, and the hole in the cellar, the defects in the house of which the defendant complained, and the only defects in the building to which he called the attention of the landlord, were, first, that the boiler and the wash-tubs leaked ; and secondly, that the heater was inadequate, and that it needed repairing. The plaintiff, when notified of these defects, sent mechanics to remedy them. These were latent defects, and, as I have already said, there is no legal presumption that they were known to the landlord. It shocks common sense to say that a landlord is conclusively presumed to know of every leak in every wash-boiler in every house he owns which is in proximity to his own abode. The judge, instead of giving the instruction I have quoted, should have left it to the jury to say whether the plaintiff knew the house to be in bad order, and, if he did not, whether the defendant had a right to take the plaintiff's statement as an affirmation by the plaintiff that he personally knew the house to be in good order. If the jury had answered either question in the affirmative, the defendant would have been entitled to a verdict, if the house had been proved to have been in bad order, and if the defendant had acted with sufficient promptitude in abandoning the premises.

The charge was not excepted to on this point, but nevertheless, a new trial should be granted. This seems to me to be a peculiar case. On reading, with great care, all the evidence, I am satisfied that the defense was utterly without merits. Testimony which was not only irrelevant and immaterial, but of a character likely to prejudice the minds of the jury, is to be found in all parts of the printed case, and the result is to be seen in the verdict, which not only deprived the plaintiff of his rent, but gave judgment for damages against him, though I have been unable to discover what the damages are for.

The judgment and the order appealed from should be reversed, and a new trial ordered, with costs to abide the event.

CHARLES P. DALY, Ch. J., and J. F. DALY, J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.