# FANNIE YALL, Appellant, v. SNOW et al.

### Division Two, March 5, 1907*.

1. **FIRE-ESCAPES: Hotel: Liability of Keeper and owner.**  The act of 1901 requiring "the owner, proprietor, lessee or keeper of every hotel, which has a height of three or more stories" to "provide said structure with fire-escapes," both the owner and lessee are liable for injuries to a lodger in the leased hotel due to a failure to construct such fire-escapes—but the initial duty to construct them is on the owner. And the word "owner" does not mean the owner of the business or the person conducting the hotel at the time of the fire, but the owner of the real estate. And this view is reenforced by section 4 of the act which provides that "all buildings hereafter erected in this State which shall come within the provisions of this law, shall, upon or before their completion, be provided with fire-escapes and any violation of this section shall constitute a misdemeanor on the part of the owner of such building"—thus resting the duty of providing fire-escapes for all buildings erected after the passage of the act upon the owner exclusively.

2. ———: ———: ———: **Equities: Lease.** Since the whole scope of the statute is to make the fire-escapes a part of the construction of the building itself, and it is unreasonable to cast upon the tenant the burden of building an expensive addition to a house to be so constructed as to become a part of it, the equities of the statute place the burden upon the landlord to construct them. Especially does the burden rest on him where the lease binds the lessee not to make any changes or alterations.

3. ———: ———: ———: **When Act Went Into Effect.**  Nor does the fact that the owner was not himself conducting the building when the act of 1901 went into effect, nor the fact that it was then leased under a lease made in 1899 for a period of ten years, release the owner from liability for injuries received by a guest in a fire in 1902, due to a failure to erect fire-escapes to the hotel.

*Note.—Decided December 22, 1906.   Motion for rehearing filed.   Motion overruled March 5, 1907.

4. ———: ———: ———: **Not Built for Hotel.** If the petition charges that the building was leased as a hotel and was occupied by the lessees as a hotel, it does not fail to state a cause of action because it does not charge that the building was constructed to be occupied as a hotel.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Blevins,* Judge.

REVERSED AND REMANDED.

*Ernest E. Wood* for appellant.

(1) The obligation to erect fire-escapes is upon all of the parties named in the statute, but primarily upon the owner. The Legislature meant the owner of the building and not the owner of the business, as the building and not the business is spoken of in the statute. (2) The statute in section one places the duty of erecting fire-escapes upon the same person or persons for buildings already erected as it does upon buildings to be erected in the future. It must be the duty of the owner of the buildings in the future to erect necessary fire-escapes. Section one of the statute places the duty of erecting exterior stairways or fire-escapes upon the same person or persons as it does the interior stairways and, therefore, primarily upon the owner or owners of the building. The terms of statute make the fire-escape a part of construction of the building itself. A fire-escape, from its very nature, is a part of the building. It is, therefore, primarily the duty of the owner to erect it when necessary. The statute says they must be stationary and made of iron. The statute calls for stair fire-escapes, "constructed so as to be placed on a blank wall," with balconies to reach the opening doors or windows. No tenant would be called upon to build such an improvement on his landlord's property. (4) Under defendants' contention that the person in charge alone is liable, neither the owner nor his lessee would

be necessarily liable, as both might have the business in charge of some other person. (5) Even if defendants' contention were true in an ordinary case, it cannot be true in this case, as the defendants leased the building as a hotel and thereby made it a hotel. In their lease they forbade the lessees from making any changes or alterations, commanded them to return the building over at the expiration of the lease as it was at the time of the lease, and reserved the right of duty. The estate of the lessees in the building can be no greater than the lease gives them. (6) Under similar statutes the courts have held that it was the duty of the owner or owners to erect the fire-escapes. Landgraf v. Kuh, 188 Ill. 490; Abraham v. Bank, 16 N. Y. St. 750; McLaughlin v. Armfield, 58 Hun 376; Weily v. Mulledy, 78 N. Y. 310; Pauly v. Steam Gauge Lantern Company, 131 N. Y. 90; Gorman v. McArdle, 67 Hun 484; Huda v. American Glucose Company, 154 N. Y. 474; Schwander v. Birge, 46 Hun 68; Sewell v. Moore, 166 Pa. St. 570; McAlpin v. Powell, 70 N. Y. 126; In re Fire-Escapes, 2 Pa. Dist. Rep. 298; Rose v. King, 49 Ohio St. 213; Jetter v. Railroad, 2 Abb. App. 598. (7) Under the general law of landlord and tenant, the exterior fire-escape is such an improvement as the landlord is called upon to make. 2 Wood on Landlord and Tenant (2 Ed.), sec. 38; 2 Shearman & Redfield on Negligence (5 Ed.), sec. 702a; 1 McAdam on Landlord and Tenant (3 Ed.), p. 440; Landgraf v. Kuh, 189 Ill. 490; Abraham v. Bank, 16 N. Y. St. 750; McLaughlin v. Armfield, 58 Hun 376.

*Collins & Chappell* for respondents.

(1) There is no duty under the common law upon any one to equip a building with fire-escapes. Pauley v. Steam Gauge & Lantern Co., 131 N. Y. 90; Jones v. Granite Mills, 126 Mass. 84; Keith v. Granite Mills,

126 Mass. 90; Schmalzreid v. White, 97 Tenn. 36; 13 Am. and Eng. Encyc. of Law (2 Ed.), 82 and note 1. (2)    Section 9037, Revised Statutes 1899, has no application to this case. Yall v. Gillham, 187 Mo. 393. (3)    Under the statute the duty of providing outside fire-escapes is imposed only upon the person who has the control, possession and occupancy of the building. Laws 1901, p. 219. (a)    Statutes are to be construed with reference to the common law. Endlich on Interpretation of Statutes, sec. 127. A penal statute is to be construed strictly. Huies v. Railroad, 95 N. C. 434. The same rule of strict construction applies to statutes creating rights or fixing liabilities where none would otherwise exist, and to all statutes in derogation of the common law. Wilbur v. Crane, 13 Pick. 290; Rogers v. Currier, 13 Gray, 139; West v. Railroad, 63 Ill. 545; Townsend v. Wilbur, 88 Ill. 197; Williams v. Vanderbilt, 145 Ill. 238; Dean v. Railroad, 119 N. Y. 540; Sutherland on Construction of Statutes, 374. (b)    The liability is several and not joint, and is imposed upon only one of the classes enumerated in the act. Schott v. Harvey, 105 Pa. St. 122. (c)    At common law the duty to keep premises in a safe condition is upon the person in occupancy and control. Murray v. Richard, 52 Hun 613; Keating v. Stevenson, 47 N. Y. 837; Railroad v. Walker, 45 Ohio St. 577; Kent v. Rogers, 44 Conn. 291; Proctor v. Railroad, 64 Mo. 112; Lee v. Smith, 42 Ohio St. 459; Burns v. Fuchs, 28 Mo. App. 279; Gibson v. Perry, 29 Mo. 247; O'Neil v. Flanagan, 64 Mo. App. 87. (d)    The act cannot and is not intended to apply to one who cannot comply with its requirements. Maker v. Slater Mill & Powder Co., 1 N. E. 176. (e)    Section 4 of the act itself indicates that it was the person in possession or control of buildings erected prior to the passage of the act upon whom the duty of erecting fire-escapes was imposed. (f)    The statutes and decisions

of other States reviewed: Willey v. Mulleby, 78 N. Y.
310; Pauley v. Steam Gauge & Lantern Co., 131 N. Y.
90; Gorman v. McArdle, 67 Hun 484; Huda v. Ameri-
can Glucose Co., 154 N. Y. 474; McLaughlin v. Arm-
field, 58 Hun 376; Lee v. Smith, 42 Ohio St. 458; Grant
v. Slater Mill & Powder Co., 14 R. I. 380; McCulloch v.
Ayer, 96 Fed. 178; Landgraf v. Kuh, 188 Ill. 484; Schott
v. Harvey, 105 Pa. St. 222.   (4)   The act relied on is
uncertain, and therefore void.   (5)   The terms of the
lease do not impose upon the owner of the fee the duty
of erecting fire-escapes.

GANTT, J.—This action was commenced in the
circuit court of the city of St. Louis, on the 7th day of
November, 1903.   It is brought by the plaintiff as the
widow of Morris Yall, deceased, for damages accruing
to her from the death of her husband by the burning of
a certain three-story brick building in the city of St.
Louis, located on the southwest corner of Olive and
Beaumont streets, and numbered 2700 and 2702 Olive
street.

The petition alleges in substance that Robert B.
Snow, the defendant, was at all the times herein men-
tioned, and is at present, the owner of the above-
described property, commonly called the Empire Hotel.
That on the 25th day of July, 1899, the defendant and
others, owners thereof, leased said property as a hotel,
to William E. and Katharine Gillham for a term of ten
years, commencing on the first day of September, 1899,
and to be fully completed and ended on the 21st day of
August, 1909, the said lessees and all claiming under
them, by virtue of the provisions of this lease, yield-
ing and paying a total rent therefor to the said lessors
or their legal representatives of $17,550, in monthly in-
stallments of one hundred dollars payable on the first
day of each month of every year during the said term,
and further stipulations of the lease are as follows:

"That the said lessee will not suffer or commit any deterioration of the said premises, nor suffer any nuisance in, upon or adjacent thereto; nor will they assign this lease, or underlet the whole or any part of the premises embraced therein, nor will they make any change or alteration in the building, nor permit them to be used or occupied in any manner other than herein specified, without the assent thereto of the said lessors, their heirs or assigns in writing be first obtained; that the said lessee will quit and deliver up the possession of the said premises to the said lessors, their heirs or assigns, peaceably and quietly, when this lease shall terminate by the limitation of its terms, or by forfeiture, in as good order and condition in every respect as the same are now or may hereafter be made by repairs, save only the wear thereof from reasonable and careful use and casualties from fire, not resulting from the design or negligence of the said lessees, their family, agents or servants. All the repairs deemed necessary by the lessees to be made at the expense of the lessees, with the consent of the lessors and not otherwise; the said lessors, their heirs or assigns shall at all reasonable times and hours have the right to enter upon and inspect the state and condition of said premises." The petition then proceeds to allege that at all times mentioned herein the defendant and others collected rent for said property from the said lessees; that the said property is three stories in height and at all times mentioned therein the said property was conducted as a hotel or lodging house by the said Gillhams; that at all times mentioned herein said defendant knew that said property was being conducted as a hotel or lodging house by the said lessees; that at all times mentioned herein it was the duty of the said defendant to provide the said hotel or lodging house, with fire-escapes, iron balconies and exterior iron stairs, as required by law. Plaintiff alleges that the said defendant, his duty as

above alleged neglecting, failed to provide fire-escapes
as required by law or at all, and further failed to pro-
vide iron balconies as required by law or at all, and
failed to provide exterior iron stairs in case of fire, as
required by law, or at all. And plaintiff further al-
leges that on the 9th day of February, 1902, while the
said hotel was being operated, with the knowledge of
said defendant, on account of the negligence of the said
defendant, there was connected with said hotel no fire-
escapes, no iron balconies and no exterior iron stairs
as required by law, or at all. That on the 9th day of
February, 1902, Morris Yall, the husband of this plain-
tiff, was a lodger of said Gillhams in the said hotel or
lodging house; that the said Morris Yall occupied a
room above the second story of the said hotel or lodg-
ing house, which said room so occupied had an outside
window; that at about three o'clock a. m. on the 9th
day of February, 1902, the said Morris Yall was
aroused from his sleep on account of fire in the said
building, and being aroused, he tried to escape from
the building, but was unable to do so owing to the fact
of there being no fire-escapes, no iron balconies and no
exterior iron stairs in connection with said hotel; that
the said Morris Yall, being unable to escape from the
said burning building on account of there being con-
nected therewith no fire-escapes or iron balconies, came
to his death within the burning building on account of
being burned by fire. That if there had been fire-es-
capes, as required by law, connected with the said hotel,
the said Morris Yall would have escaped thereby to the
ground without injury to himself. That if there had
been iron balconies connected with said hotel, as re-
quired by law, the said Morris Yall could have stood
thereon and would have been rescued by firemen. That
the death of said Morris Yall was due to the fact of
there being no fire-escapes, no iron balconies and no
exterior iron stairs connected with the said hotel or

lodging house. Plaintiff alleged that the death of the said Morris Yall was due to the neglect of the said defendant in not performing his duty as above alleged, and in not providing their said hotel or lodging house with fire-escapes, iron balconies and exterior stairways. That plaintiff is the widow of the said Morris Yall; that the said Morris Yall was the only support of this plaintiff and her infant child, and that by the death of said Morris Yall, plaintiff has been damaged by the said defendants in the sum of five thousand dollars. Wherefore, she prays judgment against the defendant Robert E. Snow for five thousand dollars.

To this petition the defendant filed the following demurrer:

"Now, at this day comes the defendant in the above-entitled cause, and demurs to plaintiff's second amended petition, and for ground of this demurrer, defendant states:

"First. That said petition does not state facts sufficient to constitute a cause of action, in this, that while it appears from the allegations of said petition that the defendant, with others, were the owners of the real estate therein described and the buildings thereon erected, it does not appear that the defendant and his co-owners were conducting a hotel or lodging house therein, and that there was therefore no duty resting upon the defendant under the law to provide or equip the said building with fire-escapes, iron balconies, or exterior iron stairs.

"Second. That said petition does not state facts sufficient to constitute a cause of action, in this, that while in said petition it is alleged that said defendant and others were the owners of real estate therein described and of the buildings thereon erected, it is not alleged that said buildings were built to be occupied or used as a hotel or as a lodging house, and that there was therefore no duty resting upon the defendant to

provide or equip the said buildings with fire-escapes, iron balconies, or exterior iron stairs.

"Third. That said petition does not state facts sufficient to constitute a cause of action, in this, that it appears affirmatively from said petition that while said defendant and his co-owners of the real estate described therein and of the buildings thereon erected, it also appears that said buildings were erected and were leased by said defendant and his co-owners for a term of ten years prior to the passage of any law requiring any person to erect fire-escapes thereon, and that the said buildings were therefore, at the time of the passage of any law requiring the erection of fire-escapes, in the possession and sole control of the lessees under said lease."

The circuit court sustained this demurrer and the plaintiff declining to plead further final judgment was rendered in favor of the defendant and for costs. Thereafter and during the same term, plaintiff filed his affidavit for an appeal to this court, which was allowed and granted.

At common law the owner of a building not particularly exposed to the danger of fire from the character of the work to be carried on in it, was not bound to anticipate the possibility of remote danger from fire, or that its occurrence would put in jeopardy the lives of his employees or tenants, and the law did not require, where the building was properly constructed for its intended use and purpose, the construction of fire-escapes,—the ordinary means of escape by stairs, halls, doorways and windows being deemed sufficient. [Pauley v. Steam Gauge Company, 131 N. Y. 90; Jones v. Granite Mills, 126 Mass. 84; Schmalzried v. White, 97 Tenn. 36.]

This action is bottomed upon the act of the General Assembly of the State approved March 27, 1901, which has been held by this court in Yall v. Gillham, 187 Mo.

393, to have superseded sections 9036 to 9045, Revised Statutes 1899, inclusive. In sustaining the demurrer to the petition the learned circuit court evidently was of the opinion that under the Act of 1901 the duty of providing outside fire-escapes was not imposed upon the owner of the building, but upon the person or persons who were in the possession and occupancy of the building at the time the Act of 1901 took effect and became operative, and that inasmuch as the defendant owner had, on the 25th of July, 1899, prior to the enactment of the said act, leased the premises to the Gillhams for a term of ten years from the first of September, 1899, and the said Gillhams were in possession thereof at the time of the fire which occasioned the death of plaintiff's husband, the defendant was not liable for the failure to provide said structure with fire-escapes attached to the exterior of the said building as required by the Act of 1901. Since the fire out of which this action has arisen occurred, the General Assembly has amended the Act of March 27, 1901, by changing sections 1, 2 and 3 of the said act (Laws 1903, p. 251), but the changes made in section 1, upon which this action is founded, have not changed the provisions of section 1 so as to affect the rights of the parties to this action.

The decisive question arising upon this record, is, was the circuit court right in holding that under the terms of this statute the owner of a leased building is not required to provide his building of the character described in the act with fire-escapes as provided by the act. Counsel for the defendant in their argument and brief have called our attention to a number of cases in other jurisdictions, notably that of the Supreme Court of Pennsylvania in Schott v. Harvey, 105 Pa. St. 222, and Keely v. O'Conner, 106 Pa. St. 321; Lee v. Smith, 42 Ohio St. 458, but an examination of the statutes upon which those decisions are based will show such a material difference from the language employed

in the Act of 1901 of our own Legislature, that those decisions afford us very little assistance in reaching a proper construction of the act before us. We are unable to adopt the construction put upon this act by the circuit court. The language of the statute is, ''The owner, proprietor, lessee or keeper of every hotel, etc., in this State, which has a height of three or more stories shall provide said structure with fire-escapes,'' etc. The law places this obligation upon the ''owner'' and for the purpose of this case it is entirely immaterial that some other persons, to-wit, the lessees may also be liable. There are no such qualifying words appended to owners, proprietors, etc., as would justify us in holding that those words only mean the party lawfully in possession when the act took effect, or when the fire occurred. The command is plain and unambiguous, and is directed to ''the owner'' and the fact that it is also directed to ''the lessee'' or ''the keeper'' of the premises, in no wise excuses him from a failure to obey the statute. The statute is a most salutary one and remedial in its character. Its object is to protect human life, and, as said by the Supreme Court of New York, in McLaughlin v. Armfield, 58 Hun l. c. 378, ''No reason is perceived why the court should strain after so strict a construction of its language as to deprive it of all useful operation.'' The lawmakers have seen fit to impose this duty of providing fire-escapes upon hotel buildings and other structures mentioned in the statute for the benefit of the guests of such hotels, and the operatives therein employed, so that in case of fire they may have a way of escape. Not only does section number one designate ''the owner'' as one of the persons whose duty it is to provide fire-escapes, but section 4 of the statute reinforces his liability by providing: ''All buildings hereafter erected in this State which shall come within the provisions of this law, shall, upon or before their completion, be provided with

fire-escapes of the kind and number and in the manner set forth in this law, and any violation of this section shall constitute a misdemeanor on the part of the owner of such building, punishable as provided in section 5." As to all buildings, then, erected after the passage of the act, it is obvious that the duty rested exclusively upon the owner himself.

Counsel for the defendant have favored us with an exhaustive brief as to the meaning of the word "owner," and as to the signification which should be attached to it in this statute in Schott v. Harvey, 105 Pa. St. l. c. 228, the court very aptly remarked, "A number of authorities were cited showing the construction which has been placed on the word 'owner' both by the Legislature and the courts. But the meaning of the word depends in a great measure upon the subject-matter to which it is applied, and as it is used in each of the instances cited in an entirely different connection, they throw scarcely a glimmer of light upon the question. The term 'owner' is undoubtedly broad enough to cover either view of the case." If the construction for which the defendant contends should be adopted, it would convict the General Assembly, in our opinion, of having used a number of useless words. If the word "owner" was intended to mean the owner of the business, or the person conducting the hotel at the time of the fire only, then it was entirely unnecessary to name the owner or proprietor. Of all the statutes to which our attention has been directed by the learned counsel on either side of this case, the act of the Legislature of Illinois, approved June 29, 1885, entitled, "An Act relating to fire-escapes for buildings," approaches more nearly to our Act of 1901 than any we have examined. In the case of Landgraf v. Kuh, 188 Ill. 493, the language of the statute was, "The owner or owners, trustees, lessee, or occupants, of any building," etc. And the same contention was made in that case as was made

in this, but the Supreme Court, through Mr. Justice
MAGRUDER, said: "Cases may be found, decided in other
States, where it has been held that the word, 'owner,'
as used in statutes of this kind, means the person in
possession of the premises destroyed by fire with the
power of controlling the same.  These cases place the
responsibility upon the person in possession and occu-
pancy of the property, and treat him as the owner for
the time being; on the ground that the nature of his
business renders the erection of fire-escapes necessary
to protect the lives of his employees.  In other words,
the word, 'owner,' is there held to be the owner of the
business conducted in the building, and not the owner
of the building itself.  [Schott v. Harvey, 105 Pa. St.
222; Keely v. O'Conner, 106 Pa. St. 321; Lee v. Smith,
42 Ohio St. 458.]  The construction thus contended for
may have been proper, as applied to the statutes under
consideration where such construction was adopted,
but cannot be held to be the proper construction of the
Illinois Act of 1885.  Section 2 of the latter act pro-
vides that 'all buildings of the number of stories and
used for the purposes set forth in section 1 of this act,
which shall be hereafter erected in this State, shall, up-
on or before their completion, each be provided with
fire-escapes of the kind and number, and in the manner
set forth in section 1 of this act.'  The fact that the
buildings are to be provided with fire-escapes 'upon or
before their completion,' indicates that the duty of pro-
viding such fire-escapes devolves upon the owners of
the buildings.  The fire-escapes are required to be a
part of the construction of the building itself.  More-
over, the notice, commanding such fire-escapes to be
placed upon the building, is required by section 3 to be
given to 'the owners, trustees, lessee, or occupant, or
either of them.'  The injunction being in the alterna-
tive, the notice may be given to the one, as well as to the
other, and, therefore, to the owner, as well as to the

lessee or occupant. We are, therefore, of the opinion that the appellees were not relieved from liability in regard to the placing of fire-escapes upon their building, because the fourth floor of the premises, where appellant's intestate was at work at the time of his death, was in the possession and under the control of tenants of appellees instead of being directly in the possession of appellees themselves." The structure of our Act of 1901 is so similar in all material respects to that of the Illinois Act of 1885, that the construction placed upon that act by the Supreme Court of Illinois applies as well to the Act of 1901 as to the Illinois Act, and we think it is a correct and proper construction of our act.

But if we are to invoke what might be termed the equities of the statute, while it unquestionably does place the obligation upon the lessee to provide the fire-escapes in case the landlord has failed to do so, we think the statute imposes the initial duty upon the owner and rightfully so, because the whole scope of our act is to make the fire-escapes a part of the construction of the building itself, and it is unreasonable as between the landlord and the tenant to cast upon the tenant the burden of building an expensive addition to the house which was to become so attached to it as to become a part of it. A fire-escape of the character and dimensions required by the act in question is a permanent one, and, as said by McAdam in his work on Landlord and Tenant (3 Ed.), vol. 1, p. 440, "It is not within the range of ordinary repairs which the tenant, in the absence of an agreement to the contrary, is required to make." In 2 Shearman & Redfield on Negligence (5 Ed.), section 702a, 1212, it is said: "In most of the States, if not all, the owners and lessees of certain classes of buildings, exceeding a specified number of stories in height, such as factories, hotels and tenement houses, are required to provide extra precautions for

the escape of the occupants in case of fire, by supplying ropes, outside ladders, doors or other appliances to that end. Under such an imposed obligation, the initial duty is on the owner." And, to the same effect is 2 Wood on Landlord and Tenant (2 Ed.), section 381. The doctrine thus announced is peculiarily applicable to this case because the landlord bound his lessee "not to make any change or alteration in the building," and the tenant might well have considered that a fire-escape of the character required by our statute would so change the appearance of the building as to constitute an alteration therein without the consent of the lessor, and, as already said, as between them and the owner, the duty in the first instance devolved upon their landlord, whatever their obligation to their guests might be.

Our conclusion is that the learned circuit court erred in holding that the petition did not state a cause of action against the defendant as owner of the building, and that it was not necessary to charge the defendant to make the further allegation that he was conducting the hotel himself when the Act of 1901 went into effect and when the fire occurred.

As to the second ground of the demurrer, that it was not alleged that the buildings were built to be occupied as a hotel, it is sufficient to say that it sufficiently appears from the petition and the lease set forth therein, that the defendant leased the house "as a hotel" and that it was conducted as a hotel by the tenants, the Gillhams, and the defendant knew it was being so conducted.

The third ground of demurrer is that the defendant owner had, prior to the passage of the Act of 1901, leased the premises for a term of ten years, and that at the time of the passage of the law requiring the erection of fire-escapes, the building was in the sole possession and control of the lessees and that therefore

the defendant had no right of entry or control over the building to construct and provide the fire-escapes. We think there is little merit in this assignment in the demurrer. It would have been no violation of the lessees' rights for the defendant to have entered upon the premises and erected the fire-escapes which the law commanded both the owner and the tenant to erect. It would have been an act in obedience to a duty to society and the tenant's own guests and employees to protect them from injury by fire. This point is expressly ruled against the defendant in White v. Thurber, 55 Hun 447, in which it was held that, "Where a landlord, upon the requirement and after notice from the department of buildings of the city of Brooklyn, enters upon demised premises for the purpose of making repairs required by said department, it is not a breach of the covenant of quiet enjoyment contained in the lease thereof." No tenant would be heard in a court of justice to complain that his landlord had performed an act to make the leased premises safe for the occupants of the building, which act the law also required of the tenant himself.

It follows that the judgment of the circuit court must be and is reversed and the cause remanded for a new trial in accordance with the views herein expressed.

*Burgess, P. J.,* and *Fox, J.,* concur.