[Civ. No. 11144. First Appellate District, Division One.—October 21, 1940.]

JEAN ROXAS, Respondent, v. P. GOGNA et al., Appellants.

Albert Picard and Francis McCarty for Appellants.

Robert G. Partridge for Respondent.

PETERS, P. J.—Plaintiff was injured when he jumped from the second story of a burning lodging house on Pacific street in San Francisco. The lodging house, on the date of the fire, was owned by the two defendants, but was then being leased to a third party not a party to this proceeding. The plaintiff brought this action against the defendant owners on two theories: (1) That the building was not equipped with fire escapes as required by an ordinance of the city and county of San Francisco, and that such ordinance imposed the duty on the owners of the building to install such fire escapes; and (2) that, irrespective of the ordinance, the owners were guilty

of negligence in failing to install fire escapes or in failing to provide proper exits from the building. The court, sitting without a jury, awarded plaintiff judgment in the sum of $3,250. From this judgment this appeal is prosecuted.

Appellants make three main contentions: (1) That the ordinance imposes no duty upon the owner of a building when such building is leased to others; (2) that the findings in reference to negligence, independent of the ordinance, are unsupported; and (3) the damages awarded are excessive.

The building in question was erected as a lodging house in 1908. The ordinance was enacted in 1909, and by express terms was made to apply to buildings thereafter erected as well as to those already constructed. The building contained three stories, and was of frame construction with a brick front. The second and third floors were intended to be used for lodging house purposes. The entrance was on Pacific street. There was a wooden stairway four feet wide running from the ground floor to the second floor. At the top of this stairway was a hall. In the front portion of the building on the second floor were two rooms, designated in the record as rooms No. 1 and No. 2. Immediately adjacent to room No. 2 was a room used as an office and designated as room No. 3. In this last-mentioned room was a fire door leading to an adjoining hotel. To pass from one hotel to the other, through this fire door, however, it was necessary to first attract someone's attention in the adjacent hotel so that an abutting fire door could be opened. In the rear of the building was a second stairway leading from the second floor to the ground level. This rear stairway however, had been covered over with a trap door. There was also a stairway leading to the third floor. Defendants became the owners of the property in 1926, and in August, 1933, leased the second and third floors to one Smith for lodging house purposes. Smith was so operating the building in December of 1933 when the fire occurred. The owners knew the rear stairway had been closed over with the trap door.

The plaintiff, who was employed as a chauffeur and butler, had been summoned to the lodging house, on the night in question, by his employer's son. Upon his arrival he was shown into room No. 2. The door to the hall was partially open. A few moments after his arrival he heard someone telephoning the fire department to report that the building

was on fire. He ran out into the hallway and discovered that the front stairway was burning, the flames reaching the ceiling. Someone had accidentally caused a lighted oil stove to roll down these stairs. He testified that he could not use the front stairway because of the flames; that he did not know of the trap door in the rear of the building; and that he was afraid to ascend to the third floor because he did not know what he would find there. He returned to room No. 2, to find that a Miss Smith and a Miss Boyd had entered the room. The flames were coming into the room. Miss Smith and then Miss Boyd jumped from the window to the ground—a distance of about fifteen feet. Plaintiff waited until he was burned by the flames and then jumped from the window, sustaining the injuries for which this action was brought. A guest of the lodging house burned to death in the fire.

Miss Boyd, one of the two women who jumped from the window before plaintiff, also brought an action against the owners of the building. The trial court, in that action, found that the mandate of the ordinance was not directed to the owners of the building, and also, on conflicting evidence, found that Miss Boyd was guilty of contributory negligence. On appeal (*Boyd* v. *Gogna,* 16 Cal. App. (2d) 442 [60 Pac. (2d) 521]) the judgment for defendants was affirmed. On the appeal, this court based its opinion entirely on the ground that the finding of contributory negligence was supported by the evidence. The court expressly declined to pass upon the question as to whether the ordinance placed any obligation upon the defendants as owners. Obviously, on the question of contributory negligence, the decision in the case has no application to the instant case. In the Boyd case the trial court found, on conflicting evidence, that plaintiff was guilty of contributory negligence; in the instant case the trial court, on substantially different evidence, found that the injuries were proximately caused by defendants' negligence and that plaintiff was free from contributory negligence.

The first question presented on this appeal is the question expressly left open in the Boyd case—did the ordinance place a duty on defendants as owners of a leased building to erect the fire escapes required by the ordinance?

The ordinance of 1909 (ordinance No. 1008 N. S.) in section 224 provides that certain types of buildings, including lodging houses of the type here involved, already erected or

thereafter constructed "shall be provided and equipped with fire escapes" of a designated type. It is also provided that the board of public works, after approval by the fire wardens, "shall determine the kind, construction, location and number of fire escapes necessary and adequate on all such buildings"; but the next section of the ordinance (sec. 225), following the last-quoted provision, expressly directs that: "Every building used as a hotel, lodging house . . . shall be provided with a portable metallic ladder of sufficient length to extend from the second story balcony to sidewalk . . . ". No fire escapes were located on the building. It is conceded that no public authority ever directed that fire escapes be placed on this building.

It is to be noted that this section above-referred to does not expressly state who shall be obligated to construct the required fire escapes. Section 302 of the ordinance provides that: "Any person, firm, company or corporation" violating the ordinance "shall be guilty of a misdemeanor", and, further, that any builder or contractor constructing a building in violation of the ordinance, and any architect in charge of construction who permits such a building to be constructed, shall be guilty of a misdemeanor. Other provisions of the ordinance are referred to in the briefs which require certain notices to be furnished the owner of the building by the fire warden and board of public works.

It is appellants' theory that this penal ordinance, inasmuch as it does not mention in section 224 upon whom the duty to construct the fire escapes rests, does not comply with the rules governing the definiteness of a penal ordinance, and is, therefore, completely ineffective. It is conceded by appellants that the city has the power to require either the owner or the lessee to erect fire protection equipment on buildings, but, it is urged, to be valid such an ordinance must name the person or persons upon whom the duty rests. It is contended that, unless the ordinance designates the person or persons upon whom the duty rests with certainty, the ordinance is uncertain, indefinite and of no legal effect, and that the court has no power to supply the defect by judicial construction. The respondent contends that the fair intendment of the ordinance is that the owner is included within its mandate, and that the only sensible construction of the language is that the duty

rests primarily on the owner. We agree with the trial court and with respondent.

The problem of construction thus presented is not a new one. It has been presented to many courts, and the various courts are by no means in accord. This difference of opinion is partially, but not entirely, due to the differences in the wording of the particular statutes under consideration. The cases are collected in an annotation entitled: "Lease of property as affecting owner's liability for failure to provide fire escapes as required by law" in 77 A. L. R. 1273; see, also, 10 L. R. A. (N. S.) 177; 15 L. R. A. 160. This difference of opinion is well-illustrated by several cases interpreting an Illinois statute. That statute did not designate in express terms who should construct the fire escapes. The federal court, in *McCulloch* v. *Ayer*, 96 Fed. 178, held that the person upon whom the duty of providing fire escapes was imposed was not designated in the statute with sufficient certainty to justify the court in imposing liability on anyone. But in *Arms* v. *Ayer*, 192 Ill. 601 [61 N. E. 851, 85 Am. St. Rep. 357, 58 L. R. A. 277], the Illinois Supreme Court reached a contrary conclusion, holding that, although the statute did not expressly state who should install the fire escapes (p. 855), "the fair and reasonable intendment is that the owner or owners shall perform the duty". The Illinois court predicated this portion of its opinion on its prior decision in *Landgraf* v. *Kuh*, 188 Ill. 484 [59 N. E. 501], interpreting a similar statute. In holding that the statute which required "all" buildings of a designated type to be equipped with fire escapes imposed the duty on the owner of the building even though it was then under lease, the court stated (p. 503): "The fact that the buildings are to be provided with fire escapes 'upon or before their completion' indicates that the duty of providing such fire escapes devolves upon the owners of the buildings. The fire escapes are required to be a part of the construction of the building itself. Moreover, the notice commanding such fire escapes to be placed upon the building is required by section 3 to be given to 'the owners, trustees, lessee, or occupant, or either of them'. The injunction being in the alternative, the notice may be given to the one as well as to the other, and therefore to the owner, as well as to the lessee or occupant. We are therefore of the opinion that the appellees were not relieved from liability in

regard to the placing of fire escapes upon their building because the fourth floor of the premises, where appellant's intestate was at work at the time of her death, was in the possession and under the control of tenants of appellees, instead of being directly in the possession of appellees themselves.''

Cases announcing substantially the same conclusion are *Carrigan* v. *Stillwell*, 97 Me. 247 [54 Atl. 389, 61 L. R. A. 163] ; *McLaughlin* v. *Armfield*, 58 Hun, 376 [12 N. Y. Supp. 164] ; *Yall* v. *Snow*, 201 Mo. 511 [100 S. W. 1, 119 Am. St. Rep. 781, 9 Ann. Cas. 1161, 10 L. R. A. (N. S.) 177]. These cases, and the cases cited therein, also establish that notice by the public authorities is not a condition precedent to liability under similar statutes.

In addition to *McCulloch* v. *Ayer, supra,* the appellants place their main reliance on *Maker* v. *Slater Mill & Power Co.,* 15 R. I. 112 [23 Atl. 63] ; *Lee* v. *Smith*, 42 Ohio St. 458 [51 Am. Rep. 839] ; *Schott* v. *Harvey*, 105 Pa. St. 222 [51 Am. Rep. 201] ; and *Keely* v. *O'Conner*, 106 Pa St. 321. The provisions of the statute in those cases were somewhat different from the provisions of the ordinance here involved. In the Maker case the law required that in every building where twenty-five or more operators were employed, fire escapes should be installed. The court emphasized that, where the owner leased his building, it would be placing an unfair burden on him to require him to comply with the law when he had no control over the number of employees hired by his tenant. In the other three cases the statutory provision required that any owner of any factory or workshop must install fire escapes. The court, as a matter of interpretation, held that the obligation was not on the owner of a building where he did not also own the factory business. It should also be noted that most of the cases relied upon by appellants were distinguished in the cases relied upon by respondent.

It must be conceded that the variance in the cases cannot entirely be explained upon the basis of difference in statutory provisions. Some of the decisions are undoubtedly conflicting in principle. After reading the cases we are of the opinion that those cases cited, *supra,* that hold that the obligation is upon the owner of a leased building, even though the statute does not expressly so provide, where the owner leases the building knowing it is to be used for purposes that bring

the building within the ordinance, are sound. ■ We are required, under elementary principles, to so interpret the ordinance as to uphold it, if possible. We must give the ordinance such reasonable interpretation as to give effect to the obvious intention of the lawmaking body. This ordinance was passed in the exercise of the police power to protect life. The lawmaking body expressly provided that buildings of a certain type should be equipped with fire escapes. Obviously, the fire escapes are a permanent addition to the building. On new buildings they must be erected at the time of construction. The duty to construct them must be held to rest on the owner or the entire purpose of the statute will be evaded. The lawmaking body could reasonably have no other intention.

This analysis is sufficient to dispose of this phase of the appeal. It is not necessary to pass on the question as to whether the findings and conclusions in reference to general negligence are sustainable. There are apparently many cases holding that the operator of a public building at common law was under no duty to construct fire escapes. Whether that rule would go so far as to prevent liability from attaching to an owner, in the absence of statute, not only for failure to construct fire escapes, but where, as here, he leased a building for lodging house purposes, with but one means of egress—the front stairway—with the back stairway effectually closed—we do not now have to determine. ■ The ordinance as herein interpreted is sufficient to impose the duty. The evidence shows a violation of that duty. There is, or can be, no serious contention that respondent was guilty of contributory negligence.

■ The only other point necessary to be considered is the contention that the judgment is excessive. The trial court awarded $2,500 general damages. The evidence shows that respondent suffered a dislocated and fractured foot. There were two severe fractures. The attending physician was of the opinion that after reduction the patient had "pretty good functional results". He testified that four bones in the foot were displaced outward; that some of the ligaments were involved; that the foot was in a cast for about five weeks; that there is a certain amount of impairment in the functions of the ankle. The plaintiff testified that he was on crutches for three months after the accident; that in May of 1936, about

two and one-half years after the accident, he still walked with a cane; that for six months after the accident he could not walk without pain; that until six months before the trial (May of 1936) he could not drive a car without pain; that he first secured employment on February 18, 1935, some fourteen months after the accident; that then he could not take a job driving an automobile and took a job as janitor. Enough has been stated to demonstrate that the award of general damages finds ample support in the record.

Appellants make no attack on an item of $150 allowed for reasonable services of the attending physician, but object to an item of $550 for eleven months' loss of wages at $50 a month. Plaintiff was earning $50 a month, plus room and board at the time of the accident. Appellants contend the evidence shows only three months' incapacitation. That is not so. At the end of three months plaintiff was able to walk, but was unable to perform his usual duties. For six months he suffered severe pain in walking. He did not, in fact, secure employment until February of 1935, some fourteen months after the accident. The award finds ample support in the record.

The only other item of damages objected to is an item of $50 for hospitalization. Respondent failed to produce any testimony that this sum was paid or incurred, or that the $50 was the reasonable value of the hospitalization.

For the foregoing reasons it is therefore ordered that the judgment of $3,250 be modified by striking therefrom the sum of $50, thus reducing the same to $3,200. As so modified, the judgment is affirmed, respondent to recover costs on appeal.

Knight, J., and Conlan, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 20, 1940, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 19, 1940.