[Civ. No. 22481.   Second Dist., Div. Three.   Apr. 14, 1958.]

RICHARD BRUCE MARILL, a Minor, etc., et al., Respondents, v. JOHN R. WEBER, Appellant.

341

Spray, Gould & Bowers for Appellant.

Wyman & Finell and Frank Rothman for Respondents.

PATROSSO, J. pro tem.*—This is an action to recover damages for personal injuries sustained by the minor plaintiff Richard Marill and for consequential damages sustained by his father and coplaintiff.

The case went to trial upon four counts of plaintiffs' complaint. In the first of these it is alleged that the defendant John R. Weber was the agent and employee of the defendants Crescent Bay Council of the Boy Scouts of America and of the Los Angeles Area Council of the Boy Scouts of America; that the minor plaintiff was a boy scout and a member of the Crescent Area Council and on July 30, 1953, he was in attendance at a boy scout camp known as Camp Wolverton which was organized, maintained and operated by Crescent Bay and Los Angeles Area Councils; that the minor plaintiff Richard paid $26 as a fee for attending the camp which included transportation to and from the camp; that defendant Weber was acting as a scoutmaster and supervisor of the activities of the boys in attendance at the camp with the knowledge, consent and authority of both Crescent

*Assigned by Chairman of Judicial Council.

Bay and Los Angeles Area Councils; that defendant Weber acting in the course and scope of his employment as agent or employee of Crescent Bay Council, undertook to take Richard from the camp to his home in Los Angeles and that Richard was a passenger in Weber's automobile; that Weber operated the automobile in a negligent manner in consequence of which Richard sustained injuries. The second count incorporates substantially all of the allegations of the first, hereinbefore set forth, but in addition alleges that the defendants were "negligent in entrusting the care and custody of the minor plaintiff to a scoutmaster and supervisor who had gone for long periods of time without sleep and was under emotional stress and undertook to operate a vehicle on the highways at high speeds while in an exhausted condition." The other two counts are each substantially similar to those previously mentioned except that they seek to recover damages sustained by the plaintiff-father for medical expense incurred in the treatment and care of Richard. It will be noted that the complaint contained no allegations to the effect that defendant Weber was guilty of intoxication or wilful misconduct and no such claim was or is advanced by the plaintiffs.

The answer of defendant Weber admits that he was driving the automobile in which Richard was riding, and the occurrence of the accident but denies that in so doing he was acting as an agent or employee of either of his codefendants, Crescent Bay and Los Angeles Area Councils, and also denies that he was negligent. In addition the answer alleges that Richard was riding in the automobile driven by Weber at his (Richard's) request and the request of Richard's father and mother; that at the time in question Richard was sick and that at the express request of Richard's parents Weber "gratuitously and without compensation agreed to, and in fact did, endeavor to transport said Richard Bruce Marill from Sequoia National Park to the City of Los Angeles."

At the close of plaintiffs' case Weber made a motion for nonsuit upon the ground that there was no evidence of intoxication or wilful misconduct, and as under the evidence the status of Richard was that of a guest, plaintiffs had failed to establish a prima facie case. The motion was denied as was also a motion for directed verdict made upon the same ground. The jury returned a verdict in favor of plaintiffs and against all of the defendants but the defendant Weber alone appeals. No claim is made that the evidence

is insufficient to support the implied finding that appellant was negligent, and the principal issues upon the trial, as here, were and are whether appellant was the agent or employee of his codefendants or either of them and whether the status of Richard was that of guest or a passenger.

Admittedly, if appellant in undertaking to transport Richard from the camp to his home, was not acting as an agent or employee of either of his codefendants, there being no claim that Richard gave any compensation to appellant for the ride, Richard was a guest, and absent evidence that appellant was intoxicated or guilty of wilful misconduct, a reversal is required.

There is no material dispute with respect to the facts. Respondent Richard was a boy scout and a member of Troop 170, which troop is a member of the Los Angeles Area Council. Appellant was a member of the Troop Committee which consisted of a group of adults. Richard's father was likewise a member of this Troop Committee. Members of the Troop Committee are not employed by the local area council. They are designated by the sponsoring organization which applies for the charter for the troop.

The Los Angeles Area Council provides camps and camping facilities and has paid employees who manage the camps. Crescent Bay Area Council conducts a "high adventure" type camp in Sequoia National Park, and the use of its camp facilities by troops of other councils is permitted. Crescent Bay Area Council opened its camping facilities to Richard's troop and others, and in the case of Richard's troop the arrangements included chartered bus transportation from Los Angeles and return, as well as the use of the camp facilities and including food for one week. The total charge for each boy was $26 and Richard's parents paid this sum.

The camp personnel of Camp Wolverton were employees of the Crescent Bay Area Council. They briefed the scoutmasters and other adults who accompanied the troops to camp and furnished supplementary guidance on overnight backwoods trips, but what was done upon these trips was under the control of the adults accompanying each troop.

The boys of Troop 170, including Richard, were taken to the camp by chartered bus. The scoutmaster of the troop did not accompany them on the trip but at least one adult, a Mr. Piehl who was chairman of the Troop Committee, did. Later the appellant drove to the camp, his boy being a scout

who was at the camp with the troop; appellant's purpose being to assist Mr. Piehl during a backwoods overnight hike.

The hike was made but during the course of it Richard, who was along, developed a sore throat and stomach upset. The hike, however. was completed and on returning to the camp Mr. Wells, the assistant manager of the camp and an employee of Crescent Bay Council, Mr. Piehl and a Mr. Gilbert (another member of the Troop Committee of Troop 170, and also a parent of one of the boys) decided to take Richard to the doctor at Lodge Pole, some distance from the place the boys were camped. He was taken to the doctor by Mr. Gilbert in his automobile. Upon arriving at Lodge Pole, Mr. Gilbert called Richard's father by telephone and the latter gave his permission for Richard to receive a penicillin injection and also gave his permission that appellant, who was leaving camp for Los Angeles on that day, bring Richard home. Appellant was not present at Lodge Pole but when Richard was returned to the camp and he was informed of the conversation between Mr. Gilbert and Richard's father, he consented to take Richard with him on his return to Los Angeles. It was during the course of the trip that the accident occurred and Richard was injured.

As grounds for reversal, appellant contends (1) that under the evidence which we have hereinabove epitomized, he was not an agent or employee of either of his codefendants and even assuming that either of his codefendants received some benefit from his undertaking to transport Richard to his home, absent any evidence or claim of intoxication or wilful misconduct, the court erred in denying his motions for a nonsuit and for a directed verdict, and (2) that if it were to be conceded that under the evidence appellant's agency and Richard's status as passenger or guest were issues of fact for the jury's determination, the court's instructions upon these issues were conflicting and erroneous.

We do not believe it may be said as a matter of law that the appellant was not the agent of either or both of his codefendants. Rather we are of the view, as respondents contend, that under the evidence this was an issue of fact for the jury. (*Cf. Brokaw* v. *Black-Foxe Military Institute* (1951), 37 Cal.2d 274, 277-278 [231 P.2d 816].) As the jury's finding upon this issue was determinative of the duty which appellant owed to Richard, it was of the utmost importance that the jury be fully and clearly instructed with respect to the law applicable thereto. Particularly, the jury

should have been told unequivocally that if they found from the evidence that appellant was not the agent or employee of either or both of his codefendants, Richard's status as an occupant of the automobile was that of a guest and that they must return a verdict for the appellant. We are in accord with appellant's second contention that this was not done and that the trial court gave erroneous and contradictory instructions upon this subject, as a result of which it cannot be determined whether the jury based its verdict upon a finding that Richard was a guest or a passenger.

The court gave instructions dealing with the doctrine of agency and defined an agent; the jury were told that if they found that appellant was the agent of either of his co-defendants, and that a benefit was conferred upon either or both of said codefendants by appellant's transportation of Richard, he owed Richard the duty of exercising ordinary care in the operation of the automobile and that failure to do so constituted negligence. They were further instructed as to the distinction between a guest and a passenger and the duty which the operator of an automobile owed to each, followed by the statement "that wilful misconduct and intoxication of John R. Weber are not issues in this trial." Then at the request of plaintiffs the court gave the following instruction:

"A person may undertake, voluntarily and beyond any legal duty, to do an act or to perform a service which involves a risk to the safety or interests of another. He may venture such service purely as a gift, as an act of kindness, or with or without expectation of compensation or reward.

"If an ordinarily prudent individual in the same circumstances and the same undertaking would realize the risk involved, then the person so acting assumes a duty of exercising ordinary care toward anyone whose health, safety or property is hazarded. A breach of that duty is negligence."

Immediately following this instruction the court at the request of the plaintiffs, gave an instruction upon the doctrine of res ipsa loquitur reading as follows:

"From the happening of the accident involved in this case as established by the evidence, an inference arises that the proximate cause of the occurrence was some negligent conduct on the part of the defendants. That inference itself is a form of evidence, and if none other exists tending to overthrow it,

or if the inference, either alone or with any other evidence,[1] it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendants to rebut the inference by showing that (he) (it) *they* did, in fact, exercise ordinary (the utmost) care and diligence or that the accident occurred without being proximately caused by any failure of duty on (his) (its) *their* part.''

. Still later, at the request of plaintiffs, the jury was instructed as follows:

''The issues to be determined by you in this case are these:

''First: Was the defendants negligent?

''If you answer that question in the negative, you will return a verdict for the defendants. If you answer it in the affirmative, you have a second issue to determine, namely:

''Was that negligence the proximate cause of any injury to the plaintiffs?

''If you answer that question in the negative, plaintiffs are not entitled to recover, but if you answer it in the affirmative, you then will find what damage plaintiff thus has been caused. to suffer, and you will return a verdict in their favor for the amount thereof.

''As indicated in this instruction, you should first determine the question of liability before you undertake to fix an amount that would compensate for damage, if any, found to have been suffered.''

The conflict between these various instructions is at once apparent. The jury were told in one breath that if appellant ''voluntarily and beyond any legal duty'' undertook ''as an act of kindness, or with or without expectation of compensation or reward'' to drive Richard home, he was under the duty of exercising ordinary care in the operation of his automobile. In the next they were told that under identical circumstances appellant was only under the duty of refraining from intoxication and wilful misconduct. They were then instructed that from the happening of the accident ''as established by the evidence'' an inference arose that the proximate cause of the accident was some negligent conduct upon the part of the appellant, which inference, if not overcome by other evidence,

---

[1]While this instruction is otherwise a copy of BAJI 206B as it appears in the fourth edition, there is omitted therefrom at this point the words therein which immediately follow, namely: ''supporting it preponderates over contrary evidence.''

warranted a verdict for the plaintiffs. When added to this the jury were instructed that the issues to be determined by them were (1) negligence and (2) proximate cause, this operated to effectively remove from the jury's consideration the vital issue as to whether appellant was acting as an agent or employee of his codefendants or either of them and as a necessary corollary, whether Richard's status was that of a guest or passenger. Indeed the instruction upon the doctrine of res ipsa loquitur and that defining the issues which the jury were called upon to determine necessarily assume that Richard's status was that of a passenger. In the light of the evidence these instructions were clearly erroneous. These instructions were not only erroneous but they effectively nullified the previous instruction wherein the jury were told that if Richard's status was that of a guest appellant was liable only if he was guilty of intoxication or wilful misconduct. The jury should have been unequivocally told that under the evidence a verdict for the plaintiffs could be returned only in the event that they found (1) that at the time of the accident appellant was acting as the agent or employee of one or both of his codefendants, (2) that some benefit was conferred upon either or both of said codefendants by reason of appellant's transportation of Richard, and (3) that the accident and consequent injury to Richard were proximately caused by the failure of appellant to exercise ordinary care.

It is manifestly impossible to determine which of the conflicting statements of law embodied in the instructions, the jury followed in reaching its verdict. They may well have believed (and this is not at all unlikely in view of the evidence) that in undertaking to drive Richard from the camp to his home, appellant was a mere volunteer and did so "as an act of kindness" and without "expectation of compensation or reward" but that under the court's instructions hereinbefore quoted, they were nonetheless required to return a verdict in favor of plaintiffs if they found that he failed to exercise ordinary care even though they further found that appellant was not acting as the agent or employee of either of his codefendants. If they reached the verdict upon this hypothesis, it was clearly erroneous.

■ As stated in *Sebrell* v. *Los Angeles Ry. Corp.* (1948), 31 Cal.2d 813, 817 [192 P.2d 898]:

"Instructions that are contradictory in essential elements may warrant the reversal of a judgment on the ground that it cannot be ascertained which instruction was followed by the

jury. (*Chidester* v. *Consolidated People's Ditch Co.*, 53 Cal. 56, 58; *Starr* v. *Los Angeles Railway Co.*, 187 Cal. 270, 280 [201 P. 599]; *Soda* v. *Marriott*, 118 Cal.App. 635, 643 [5 P.2d 675].) **[3]** In determining whether there is such a conflict the decisive question is whether the instructions read as a whole and in the light of the circumstances of the case in which they were given, are apt to confuse a person of ordinary intelligence.''

█ The instructions when read in their entirety are not only contradictory but the instruction previously quoted whereby the jury was told that one who volunteers to do an act or perform a service ''as an act of kindness'' and ''without expectation of compensation or reward'' is under the duty of exercising ordinary care, is under the evidence clearly erroneous as contrary to Vehicle Code, section 403, for here the only act or service which appellant volunteered to perform was to drive Richard home from the camp in his automobile. Nor may it be said that this error was cured by the giving of an instruction in the terms of that section, for if the statement to the jury of an essential principle of law is materially incorrect, the error is not remedied by a correct declaration of the same principle in another instruction. (*Wells* v. *Lloyd* (1942), 21 Cal.2d 452, 458 [132 P.2d 471].)

That appellant was seriously prejudiced by the conflicting and erroneous instructions in question may not be doubted.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.