[Civ. No. 6072. Fourth Dist. June 13, 1960.]

ROSE LONGWAY, Appellant, v. WILLIAM JEROLD McCALL et al., Respondents.

Morris B. Chain and Robert A. Farrell for Appellant.

Mack, Bianco, King & Eyherabide and Henry C. Mack for Respondents.

COUGHLIN, J.—The plaintiff sustained injuries in an accident involving a defective elevator and brought this action for damages against the defendant Stoner, as owner of the premises on which the elevator was located, and against the defendants McCall, as tenants in possession of those premises. After trial, a judgment of nonsuit was entered in favor of the defendant Stoner and a judgment on the verdict of the jury was entered in favor of the defendants McCall. The plaintiff appeals from the judgments so entered.

### Appeal from Judgment of Nonsuit

"A trial court is justified in granting a motion for nonsuit '. . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all of the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.'" (*Blumberg* v. *M. & T. Incorporated*, 34 Cal.2d 226, 229 [209 P.2d 1].)

In conformity with the foregoing rule, the evidence most

favorable to the plaintiff will be set forth as a statement of the facts to be considered on this appeal.

On the day of the accident in question, and for a number of years prior thereto, the defendant Stoner was the owner of a store building, a portion of which was rented to the defendants McCall, who operated a barber and beauty supply business. For some time their tenancy had been on a month to month basis. In 1946 the defendants McCall built the freight elevator which was involved in the accident. Prior thereto they asked for and obtained permission to do so from Stoner's agent, a man by the name of Watson, who had managed the building in question since 1943. The McCalls proceeded to construct the elevator, but in doing so did not comply with regulations promulgated by the Division of Industrial Safety for the State of California. Contrary to such regulations, no permit to install was obtained; no inspection was undertaken as required; no permit to operate was issued; the "cage" was raised and lowered by means of an electric hoist which was attached to the top of the "cage" with an open hook which did not have a device preventing it from becoming disengaged if the "cage" became stuck and the motor was activated for a downward movement; no safety brakes or stopping device was provided; and there was no pit or safety bumper at the bottom of the shaft. ■■■ The safety orders in question were issued to safeguard the general public against injury or loss of life, and the plaintiff was entitled to the benefit of their protection. (*Porter* v. *Montgomery Ward & Co., Inc.*, 48 Cal.2d 846, 849 [313 P.2d 854]; *Nungaray* v. *Pleasant Valley etc. Assn.*, 142 Cal.App.2d 653, 663 [300 P.2d 285]; *Pierson* v. *Holly Sugar Corp.*, 107 Cal.App.2d 298, 302 [237 P.2d 28].) The record would support a conclusion that the injuries received by the plaintiff proximately resulted from a failure to comply with the regulations of the Division of Industrial Safety, i.e., were attributable to the condition of the hoist, a lack of brakes or stopping device and the nonexistence of a properly equipped pit.

The plaintiff was a subtenant, under the defendants McCall, of a portion of the premises which they had rented from the defendant Stoner, consisting of desk space together with incidental storage and rest room privileges. The relationship between the plaintiff and the McCalls was cooperatively friendly, giving each other mutual assistance in their business affairs and exchanging social amenities.

The McCalls stored their supplies in the basement and the

elevator was used in connection with the movement thereof. For this purpose it has been used by the McCalls, by stock boys, and also by the plaintiff when she cared for the store while the McCalls were away. Mrs. McCall had shown the plaintiff how to operate the elevator and the latter had done so on a number of occasions.

In addition, the elevator had been used by a postman, by a fire inspector, by business associates of the McCalls and by an employee of Stoner's managing agent.

On July 24, 1956, the elevator stuck in the shaft a little below the level of the floor when a mop bucket had become lodged between the platform of the elevator and the floor joist. After this happened, Mrs. McCall came over to the plaintiff's desk; complained of her bad luck; and related how the mop bucket wheel was stuck in the elevator. Thereupon Mrs. McCall and the plaintiff, to use the latter's words, "both went back, and sure enough, it was stuck there." "I turned around and said, 'I will go in Hannings or Henley's and see if there is somebody with a stick and see if it could be worked loose.'" The two ladies then started out; met a postman who was coming into the premises; and the plaintiff asked him if he knew anything about elevators, to which he replied, "No, but we will go and see it." Thereupon, all three of them started toward the elevator which was in the back of the store. While on their way Mrs. McCall left them to answer a telephone call. The postman and the plaintiff proceeded to the elevator. After looking down the shaft and seeing the bucket, the postman, thinking he could jar the platform loose, stepped down into the elevator and "jumped up and down on the thing, but it wouldn't budge." He then asked the plaintiff to get into the elevator, believing if there were "a little more weight on this thing, the thing would loosen up." The plaintiff stepped into the elevator and shortly thereafter it started to move, plummeted to the ground, and caused the plaintiff to sustain serious injuries. The plaintiff never had inspected the machinery of the elevator; was not acquainted with the mechanics of its operation or of its deficiencies; and did not know the condition of the hoist hook. ■ The circumstances incident to the relationship between plaintiff and the McCalls and surrounding the occurrence in question were such that the jury could have concluded that the plaintiff was on the elevator as an invitee. ■ An invitation to enter upon the premises of another need not be express but may be implied from the conduct of the possessor. (*Oettinger* v. *Stewart*, 24 Cal.2d 133,

136 [148 P.2d 19, 156 A.L.R. 1221].) ██ The facts heretofore noted justify the inference that Mrs. McCall solicited the plaintiff's assistance to free the elevator.

██ "Statutes and ordinances prescribing the safety features of buildings impose a duty of compliance upon the property owner. Where such a statute or ordinance fails to designate the person charged with the duty of compliance, the initial responsibility is that of the owner." (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 423 [218 P.2d 17]; *cf. Roxas* v. *Gogna,* 41 Cal.App.2d 234 [106 P.2d 227].)

██ Where an owner leases premises and knows they are to be used for purposes which require structural changes regulated by safety laws, the duty to comply therewith is upon him. (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 423 [218 P.2d 17]; *cf. Roxas* v. *Gogna,* 41 Cal.App.2d 234 [106 P.2d 227].)

██ "In such a case, the obligation of the owner as to third persons is not under the contract with the lessee, but rather under the law, violation of which constitutes negligence." (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 423 [218 P.2d 17]; *cf. Roxas* v. *Gogna,* 41 Cal.App.2d 234 [106 P.2d 227].)

██ When a tenant makes structural changes in a building which are in violation of safety regulations and the owner has knowledge thereof, the law imposes upon the latter the duty "to terminate the tenancy or force the tenant to . . . comply with the mandate of the safety measure . . ." (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 422-426 [218 P.2d 17].)

██ There is sufficient evidence in this case to sustain a finding that the tenant requested permission from the owner to construct an elevator on the leased premises; that permission was given; that pursuant thereto the elevator was constructed; and that its construction was in violation of safety regulations, creating conditions which caused the injuries sustained by the plaintiff. The fact that permission was asked of and received from the owner's managing agent is not an altering legal circumstance. The granting of such permission is within the scope of such an agent's authority.

Moreover, there is sufficient evidence to support a finding that the defendant Stoner knew of the conditions in question.

██ "Actual knowledge of a property owner, where necessary as a basis of liability, may be inferred from his knowledge of other facts placing him on inquiry." (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 424 [218 P.2d 17].)

██ The defendant, through his agent, knew that the

tenant intended to install an elevator and this fact should have placed him on inquiry respecting compliance with the safety regulations in question. Prior to the accident the elevator had been in operation for 12 years; an agent of the defendant manager, who collected the rent, had used the elevator; and both this agent and the manager had been about the premises frequently.

In support of the judgment of nonsuit, the defendant Stoner places stress upon *Hale* v. *Depaoli,* 33 Cal.2d 228, 232 [201 P.2d 1, 13 A.L.R.2d 183] and *Goodman* v. *Harris,* 40 Cal.2d 254 [253 P.2d 447]. The decision in the first case considered the liability of a landlord under the common-law rule for injuries resulting from a known latent defect. The issues therein were substantially different from those in the case at bar. The liability of the owner in the instant case is based on the violation of statutory safety regulations and not upon the common-law obligation of a lessor. (*Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 423-428 [218 P.2d 17].) The second cited case, i.e., *Goodman* v. *Harris,* 40 Cal.2d 254 [253 P.2d 447], involved an action for damages arising out of injuries caused by the allegedly defective condition of leased premises. A judgment for nonsuit in favor of the landlord was sustained upon the ground that the injuries were caused by a defective heater which had been installed by the tenant and which was not affixed to the realty. The principal controversy centered about the issue whether or not the heater was a fixture. In the case at bar, without doubt, the elevator became affixed to the leased premises. The cited case does not support the contention made. To the contrary, it would appear to support the position of the plaintiff because of the intimation therein that liability would have been imposed on the landlord if the heater had been attached to the leased building.

It should be noted that liability in the case at bar is not predicated on the negligent maintenance or operation of the elevator, which was under the immediate control of the tenant, but is predicated on the structurally defective condition thereof which became a part of the leased premises with the landlord's consent. The duty of the landlord to third persons arises out of permitting the tenant to make structural changes which might injure another if reasonable care is not exercised. Noncompliance with safety regulations such as those involved in this case constitutes a failure to exercise reasonable care. (*Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 423 [218 P.2d 17].) The liability of the landlord is predicated on his fault

in permitting the tenant to create a defective condition and not upon the fault of the tenant who created the condition. (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 427 [218 P.2d 17].) ▮▮▮ An owner may not delegate to a tenant his duty to exercise care to prevent injury to third persons arising out of structural changes over which the owner has control. (*Brown* v. *George Pepperdine Foundation*, 23 Cal.2d 256 [143 P.2d 929] ; *Knell* v. *Morris*, 39 Cal.2d 450, 456 [247 P.2d 352].) ▮▮▮ The order granting defendant Stoner's motion for a nonsuit was improper.

### Appeal from Judgment on Verdict

▮▮▮ The plaintiff contends that the court committed prejudicial error in giving certain instructions.

The jury was instructed that the "plaintiff was a tenant occupying premises leased from the defendant at the time of the alleged accident"; that, to find the defendant liable they "must first find that the defendant was guilty of actionable negligence"; and, in considering this issue "must be guided by these rules of law: It is a prospective tenant's duty to make reasonable inspection of the premises before she takes possession and the law holds that she assumes the risk of any unsafe condition that comes to her attention *or that would come to her attention if she had made such an inspection and exercised ordinary care in doing so. Having thus assumed the risk of such condition, the tenant may not hold the occupier liable for injury resulting from it.* Even if it may be said that the landlord was negligent in permitting or creating that condition, such negligence is not actionable and plaintiff may not recover for her injuries." (Emphasis added.) In substance, as applied to the facts in this case, the court told the jury that the plaintiff was required to make an inspection of the premises and that she could not recover if her injury was caused by any condition which would have come to her attention "if she had made such an inspection and exercised ordinary care in doing so." The only premises the condition of which gave rise to plaintiff's injuries were those upon which the elevator was located. In applying the court's instruction, the jury must have so concluded. There was no contention that plaintiff's injuries were caused by a defective condition in any other part of the premises. As applied to this case, the instruction was not a correct statement of the law. It imposed upon the plaintiff the absolute duty to inspect the elevator before occupying the same; charged her with assuming the risk of a

dangerous condition caused by the defendants' failure to comply with the safety regulations; and barred recovery for injuries resulting not only from known dangers but also from unknown dangers if the plaintiff would have known thereof had she made an inspection and exercised ordinary care in doing so.

A person for whose protection safety regulations have been enacted does not assume the risks of a dangerous condition resulting from a violation thereof. (*Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 430 [218 P.2d 17]; *Guerrero* v. *Westgate Lumber Co.,* 164 Cal.App.2d 612, 618 [331 P.2d 107]; *Maia* v. *Security Lumber & Concrete Co.,* 160 Cal.App. 2d 16, 20 [324 P.2d 657]; *Atherley* v. *MacDonald, Young & Nelson,* 142 Cal.App.2d 575, 587 [298 P.2d 700].) As heretofore noted, the plaintiff, as a member of the general public, was one of the class of persons whom the regulations in question were intended to protect. (*Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846, 849 [313 P.2d 854]; *Nungaray* v. *Pleasant Valley etc. Assn.,* 142 Cal.App.2d 653, 663 [300 P.2d 285]; *Pierson* v. *Holly Sugar Corp.,* 107 Cal.App.2d 298, 302 [237 P.2d 28].)

In addition to the charge respecting assumption of risk which was contained in the foregoing instruction, the court told the jury in instructions respecting the status of a licensee that such a person assumed the risk of an existing dangerous condition and, in further instructions, set forth general principles on the doctrine of assumption of risk, as such.

Under the authorities heretofore cited, the instructions which advised the jury that the plaintiff assumed the risk of a condition resulting from the violation of the elevator safety orders were erroneous.

The defendants contend, however, that the giving of these instructions was not reversible error because the plaintiff also proposed instructions on the doctrine of assumption of risk and, under well-settled rules, may not complain of error which she invited. (*Nevis* v. *Pacific Gas & Electric Co.,* 43 Cal.2d 626 [275 P.2d 761]; *Carlson* v. *Glanville,* 170 Cal.App. 2d 246, 249 [338 P.2d 580]; *Greenleaf* v. *Briggs,* 78 Cal.App.2d 720, 725 [178 P.2d 459]; *Cedzo* v. *Bergen,* 53 Cal.App.2d 667, 675 [128 P.2d 683]; *Miller* v. *Dollar Steamship Lines, Inc.,* 19 Cal.App.2d 206, 219 [64 P.2d 1163].) There were two instructions on assumption of risk which were proposed by plaintiff. The first of these was a duplicate of that proposed

by the defendants and described generally "a legal principle commonly referred to by the term 'assumption of risk.'" The court gave both the instruction proposed by the defendants and that proposed by the plaintiff. The second instruction noted the distinction between the assumption of risk which bars recovery and the "ordinary and necessary acceptance of common risks such as surround us all." As distinguished from the instruction given at the request of the defendants, the two instructions given at the request of the plaintiff apply only to the doctrine of assumption of risk, as such, and did not apply to risks which a licensee assumes as an incident to that status nor to the duty of a tenant to make a reasonable investigation and the assumption by her of any unsafe condition which would have been discovered if she made such investigation and exercised ordinary care in doing so. The two instructions proposed by the plaintiff did not invite the error present in the instructions concerning the rights and obligations of a licensee and a tenant.

As a licensee, the court instructed the jury:

(1) ". . . If she knows of the nature of the activities conducted upon the land and the manner in which they are conducted, she has all that she is entitled to expect, that is, an opportunity for an intelligent choice as to whether or not the advantage to be gained by coming on the land is sufficient to justify her in incurring the risk incident thereto."

This instruction assumed there was a risk incident to entry upon the land.

(2) "If you find from the evidence that the plaintiff was, at the time and place of the accident here in question, on the property of the defendant as a licensee, you are hereby instructed that the defendant was under no duty to the plaintiff to maintain his land or any structures on the land in a safe condition."

(3) ". . . the owner or occupant of premises is under no duty to a licensee to alter or repair the premises as they existed when the licensee entered. As to all the conditions of such premises then existent, a licensee assumes the risk incident thereto."

The foregoing instructions contain an incorrect statement of the law as applied to this case. They are based on the general rule that a licensee takes the premises on which he enters as he finds them and assumes the ordinary risks incident to the condition of those premises. (*Palmquist* v. *Mercer*,

43 Cal.2d 92, 102 [272 P.2d 26]; *Oettinger* v. *Stewart*, 24 Cal.2d 133, 137 [148 P.2d 19, 156 A.L.R. 1221]; *Giannini* v. *Campodonico*, 176 Cal. 548, 550 [169 P. 80]; *Means* v. *Southern California Ry. Co.*, 144 Cal. 473, 479 [77 P. 1001, 1 Ann.Cas. 206]; *Nelson* v. *Jensen*, 177 Cal.App.2d 270, 272 [2 Cal.Rptr. 180]; *Simpson* v. *Richmond*, 154 Cal.App.2d 27, 30 [315 P.2d 435]; *Yazzolino* v. *Jones*, 153 Cal.App.2d 626, 636 [315 P.2d 107]; *Demmer* v. *City of Eureka*, 78 Cal.App.2d 708, 712 [178 P.2d 472]; *Koppelman* v. *Ambassador Hotel Co.*, 35 Cal.App.2d 537, 540 [96 P.2d 196].)

A limitation upon the application of this general rule occurs when the condition of the premises is the result of a violation of a statutory duty imposed upon the owner by safety regulations prescribed for the benefit of the general public. In such a case a licensee does not assume the risks incident to such condition. (*Courtell* v. *McEachen*, 51 Cal.2d 448, 459 [334 P.2d 870]; *Langazo* v. *San Joaquin L. & P. Corp.*, 32 Cal.App.2d 678, 690 [90 P.2d 825]; *Richardson* v. *El Paso Consol. Gold Mining Co.*, 51 Colo. 440 [118 P. 982, 986]; *Keyser* v. *Chicago & G. T. Ry. Co.*, 66 Mich. 390 [33 N.W. 867, 871]; *Conway* v. *Monidah Trust Co.*, 47 Mont. 269 [132 P. 26, L.R.A. 1915E 500]; *Chicago B. & Q. R. Co.* v. *Grablin*, 38 Neb. 90 [56 N.W. 796, 797, 57 N.W. 522]; *Racine* v. *Morris*, 201 N.Y. 240 [94 N.E 864] affirming 136 App.Div. 467 [121 N.Y.S. 146, 150]; *Drake* v. *Fenton*, 237 Pa. 8 [85 A. 14, Ann.Cas. 1914B 517].)

"The cases which support this rule are based upon the fundamental concept that the question of the status of the party injured cannot be raised, for the reason that the law is a police regulation designed to protect the public." (*Langazo* v. *San Joaquin L. & P. Corp.*, *supra*, 32 Cal.App.2d 678, 691.)

In a similar vein, it may be noted that the policy which forbids the application of the doctrine of assumption of risk in actions involving injury resulting from a violation of statutory regulations enacted for the protection of human life (*Finnegan* v. *Royal Realty Co.*, *supra*, 35 Cal.2d 409, 431) applies with equal force in determining the obligation of a land owner to a licensee for injuries caused by the defective condition of his premises attributable to a violation of such regulations, and supports the conclusion that the licensee does not assume the risks created by such condition.

The instructions heretofore quoted respecting the

rights and obligations of a tenant and a licensee were erroneous.

In addition, the part of the instruction which told the jury that plaintiff was a tenant; advised them that she was obliged to inspect the premises; and that she assumed the risk of any unsafe condition "that would come to her attention if she had made such an inspection and exercised ordinary care in doing so," as an instruction on the doctrine of the assumption of risk is erroneous, and is confusing, in that the jury must have considered it as an instruction upon such doctrine. The doctrine of assumption of risk applies only to a dangerous condition which the plaintiff knew or must have known to exist and not to a dangerous condition which he should or could have discovered by the exercise of ordinary care. (*Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158, 159-162 [265 P.2d 904] ; *Hayes* v. *Richfield Oil Corp.,* 38 Cal.2d 375, 384 [240 P.2d 580] ; *Guerrero* v. *Westgate Lumber Co.,* 164 Cal.App.2d 612, 618 [331 P.2d 107].)

The defendants urge a two-fold contention respecting the nonprejudicial character of the questioned instructions. First, that the statements contained therein correctly set forth the general rule. Secondly, that other instructions, free of the alleged erroneous statement of the law, correctly advised the jury in the premises. These latter instructions were those given at the request of the plaintiff. The vice of these contentions is that the instructions respecting the general rule concerning the rights and obligations of a tenant and of a licensee are not applicable to premises upon which there exists a defective condition resulting from a failure to comply with safety regulations promulgated for the benefit of the general public; and that the giving of applicable correct instructions does not cure the defect of incorrect or inapplicable instructions where it cannot be determined upon which instructions the jury may have relied. (*Sebrell* v. *Los Angeles Ry. Corp.,* 31 Cal.2d 813, 817 [192 P.2d 898] ; *Lewis* v. *Franklin,* 161 Cal.App.2d 177, 185 [326 P.2d 625] ; *Miller* v. *Schell,* 149 Cal.App.2d 346, 351 [308 P.2d 445] ; *Marill* v. *Weber,* 159 Cal.App.2d 340, 347 [324 P.2d 8] ; *Henderson* v. *Drake,* 138 Cal.App.2d 621, 624 [292 P.2d 254] ; *Eslick* v. *Leach,* 135 Cal.App.2d 455, 457 [288 P.2d 38].)

The instructions in the instant case were erroneous and a review of the record readily indicates their prejudicial nature.

The judgment of dismissal upon the motion for nonsuit as

to the defendant Stoner, and the judgment in favor of the defendants McCall, are reversed.

Shepard, Acting P. J., concurred.

A petition for a rehearing was denied July 8, 1960, and the following opinion was then rendered:

THE COURT.—In their petition for rehearing respondents direct attention to the fact that no comment was made in the opinion herein respecting the effect of the pretrial statements and the pretrial order on the instructions which this court held to be prejudicially erroneous. These statements and order indicated that one of the issues to be "tried" or "determined" was that of assumption of risk. The defense of assumption of risk was raised by respondents' answers, and as such, was an issue to be "tried" or "determined." However, this did not mean that the issue was to be submitted to the jury for determination when the evidence, as a matter of law, did not authorize such submission. In the latter instance the court should have determined the issue by proper instructions. As indicated in the opinion, its error in giving instructions on the defense of assumption of risk, as such, was waived by the plaintiff's proposal of similar instructions. However, this waiver did not extend to the errors included in instructions respecting the duty owed a tenant or licensee. The law with respect to this duty under the evidence in this case was not altered by the pretrial statements or order.

Respondents' petition for a hearing by the Supreme Court was denied August 10, 1960.